NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL E. JOHNSON<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>　　　　　　　Defendant. | Civil Action No. 10-cv-05862 (SDW)<br><br><br><br>**OPINION**<br><br><br>October 26, 2011 |

**WIGENTON**, District Judge.

　　Gail E. Johnson ("Johnson" or "Plaintiff") appeals from the final decision of the Commissioner of Social Security (the "Commissioner"), denying Johnson disability benefits under the Social Security Act ("the Act"). Johnson, on appeal, contends that she is entitled to disability insurance benefits under Sections 216(i) and 223(d) of the Act. Johnson contends that Administrative Law Judge Dennis O'Leary (the "ALJ") erred in determining that Johnson is not disabled under the Act and that his decision is not supported by substantial evidence.

　　The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

　　For the reasons stated below, this Court **AFFIRMS** the Commissioner's decision.

PROCEDURAL HISTORY AND BACKGROUND

　　Johnson was born on April 26, 1976 and is a forty-year-old woman with a high school degree and certificate in office automation. (R. at 130, 299.) She held jobs from 1987 through 2000 as a secretary, food service worker, and customer service representative. (R. at 299-301.)

On November 6, 2003, and again on April 12, 2005, Johnson applied for Social Security disability benefits, claiming that she became disabled and unable to work as of October 1, 2002. (R. at 30-32, 130.)  She claims disability due to her "degenerative disc disease, fractured shoulder, knee surgery, asthma, diabetes mellitus, and hypertension."  (Pl.'s Br. 6; R. at 30-32.) Johnson sought disability benefits from October 1, 2002, when she allegedly became disabled, through June 30, 2005, the last day on which Johnson met the insured status requirements for entitlement to disability benefits.  (R. at 337.)  During the period she was insured for disability benefits, Johnson was five feet six inches tall, weighed approximately 250-260 pounds (R. at 33, 342.), and was in her early thirties.  (R. at 30.)  To support her disability claim, she provided medical examinations and testimony.

The Commissioner denied her claim on June 8, 2005, and again on July 27, 2005.  (R. at 132-35, 138-40.)  After the denials, Johnson requested a hearing before the ALJ, which was held on June 2, 2006.  (R. at 15.)  Following the hearing, on September 27, 2006, the ALJ issued a decision denying Johnson's request for disability benefits, finding that she was not disabled under the Act  (the "ALJ's September 27, 2006 Decision").  (R. at 22.)  The Appeals Council affirmed the ALJ's September 27, 2006 Decision on June 1, 2007.  (R. at 7.)

Thereafter, Johnson filed a complaint in federal court on July 24, 2007, seeking this Court's review and reversal of the Commissioner's final decision.  (Complaint, *Johnson v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 52089 (D.N.J. July 9, 2008) (No. 07-3433).)  The Honorable Dickinson R. Debevoise reviewed the ALJ's September 27, 2006 Decision and found that the ALJ "did not consider Johnson's June 5, 2006, MRI, her ankle and knee surgeries, [and] her gross overweight and improperly dismissed Johnson's treating physician's observations" ("Judge Debevoise's July 9, 2008 Opinion").  (R. at 356.)  As a result, the district court reversed

and remanded the case for further proceedings. *Johnson v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 52089, *19 (D.N.J. July 9, 2008). Specifically, Judge Debevoise ordered a reexamination of the ALJ's findings at step three and step five of the five-step sequential process used to determine whether an individual is disabled under the Act. (R. at 363); *see* 20 C.F.R. § 404.1520(a).

On March 11, 2009, pursuant to Judge Debevoise's July 9, 2008 Opinion, another hearing was held for Johnson's disability claim. (R. at 490.) On April 28, 2009, the ALJ again found that Johnson was not disabled under the Act (the "ALJ's April 28, 2009 Decision"). (R. at 349.) The ALJ's April 28, 2009 Decision is the subject of Johnson's current appeal.

**Medical Records**

In determining that Johnson was not disabled under the Act and upon issuing the ALJ's April 28, 2009 Decision, the ALJ reviewed Johnson's medical records and cited specific medical examinations, including: numerous Magnetic Resonance Imaging ("MRI") examinations, (R. at 341-45, 347); medical records from Rahway-Edison Orthopedic Group ("Rahway") (R. at 71-73, 341); a report from consultative examiner Dr. Justin Fernando ("Dr. Fernando") (R. at 342); a report from the Disability Determination Services examiner ("DDS examiner") (R. at 343-44); and a Residual Functional Capacity Questionnaire by Dr. Andrew Rajapakse ("Dr. Rajapakse"). (R. at 342-43.) Furthermore, the ALJ considered and cited the testimonies of Johnson, medical expert Dr. Martin A. Fechner ("Dr. Fechner"), and vocational expert Rocco J. Meola ("Meola"). (R. at 339-40, 346-49.) A brief summary of the relevant medical examinations and testimony cited by the ALJ follows.

Rahway's medical records indicated that Johnson had a new-born child and a fourteen-month-old child that weighed twenty-seven pounds, which she frequently lifted from floor level.

(R. at 72-73, 341.)  According to the records, by January 23, 2003, Johnson was feeling well; by March 17, 2003, Johnson lost twenty pounds; and on April 14, 2003, x-rays indicated "very excellent" results, showing interval healing of her proximal humerus and showing that her hardware was in a good position.  (R. at. 69, 341.)  On April 28, 2003, although Johnson continued to complain of right knee pain, no instability was noted.  (R. at 67, 341.)  On August 1, 2003, surgery was performed on Johnson's left knee, which resulted in an excellent range of motion in that knee.  (R. at 62-63, 341.)  On November 7, 2003, an MRI examination of the lumber spine showed disc bulging, facet arthropathy, and no evidence of herniation, significant spinal stenosis or cord compression.  (R. at 342.)

Dr. Fernando's May 19, 2005 report noted that Johnson weighed 250 pounds; did not have acute distress; had a normal gait; could walk on her heels without difficulty; was able to rise from her chair without difficulty; could squat about thirty percent in full; had a normal stance; and did not use an assistive device during the examination.  (R. at 220, 342.)  The report further stated that Johnson's cervical spine showed full flexion, extension, lateral flexion and full rotary movement bilaterally, with no evidence of scoliosis or kyphosis or abnormality in the thoracic spine.  (R. at 222, 342.)  Johnson's motion of her right shoulder was limited, but she had a full range of movement in her left shoulder.  (R. at 222-23, 342.)  Dr. Fernando did not observe any subluxations, contractures, ankylosis or thickening, but observed that her left sacroiliac joints were tender.  (R. at 223.)  Dr. Fernando also noted a mild degree of diminished sensory perception and pain perception in the lower left extremity, intact vibratory sensation, and no motor deficit.  (R. at 223, 342.)

Dr. Fernando diagnosed Johnson with degenerative disc disease of the lumbar spine, lumbar radiculopathy, remote history of fracture of the right shoulder, status post open reduction,

4

internal fixation of the right shoulder, hypertension, asthma, diabetes, and obesity. (R. at 223-24, 342.) He also found that Johnson had mild limitations for elevation of the right arm over her shoulder and moderate limitations with bending, lifting, and carrying. (R. at 224, 342.)

The DDS examiner's report, dated June 3, 2005, included that Johnson had the ability to push and pull, lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday with periodic alternation between sitting and standing. (R. at 233, 343-44.) The DDS examiner found that Johnson had limitations with reaching in all directions, including overhead of her right shoulder. (R. at 234, 344.) The DDS examiner also found Johnson to be only partially credible because of the following: 1) a December 21, 2004 MRI, which showed no evidence of herniation, significant spinal stenosis or cord compression; 2) a December 14, 2005 MRI, which showed disc bulging, but no evidence of herniation, spinal stenosis or cord compression; and 3) inconsistencies with chronic pain and her stated activities. (R. at 234, 240.) The DDS examiner noted that despite Johnson's assertion that she cannot sit or stand for long periods, she shops in a power wheelchair for up to three hours; sits to use a computer for an unspecified time; cares for two children, which includes feeding them, dressing them, taking the older child to school, and playing with the younger child; goes to girl scout meetings; prepares meals with help; and performs household chores with help. (R. at 240.) The DDS examiner also did not think Johnson was credible because she did not use assistive devices during her exam with Dr. Fernando. (R. at 240.) Moreover, Johnson had a normal gait and stance, a 5/5 strength in the upper and lower extremities, and stable and non-tender joints, except for the left sacroiliac joint. (R. at 240.)

In Dr. Rajapakse's questionnaire, dated April 2006, it was reported that Johnson had limited range of movement of the lumber spine, accompanied by pain. (R. at 255, 342.) Dr. Rajapakse opined that Johnson was able to sit, stand, and walk for less than two hours; could lift about ten pounds in a competitive work situation; could not engage in repetitive reaching, handling, or fingering; must walk with an assistive device; could only walk half a city block without resting; and would likely be absent from work more than four times a month because of her impairments. (R. at 257-59, 342-43.) Further, Dr. Rajapakse reported that Johnson was prescribed Vicodin and Skalaktin, which cause drowsiness and dizziness. (R. at 256.)

A June 5, 2006 MRI examination showed L4-5 herniation in the spine, directed toward the right of midline, L2-3 annular tear, and diffuse disc bulging with posterior element spondylosis causing spinal canal encroachment. (R. at 280-81, 343.) There was no evidence of cord compression. (R. at 281, 343.)

A January 23, 2009 MRI examination of the lumbosacral spine showed multilevel disc bulging, but there was no significant focal disc herniation, spinal canal stenosis, or interval change. (R. at 483, 345.)

**Testimony**

In addition to the medical examinations and reports, the ALJ considered testimony from Johnson, Dr. Fechner, and Meola. Johnson had an initial hearing on June 2, 2006, where she testified, in part, that she had several physical and mental limitations, and explained that in a typical day she helped her daughters get ready for school, prepared breakfast, took her daughters to school and picked them up, helped with the laundry and cooking, and shopped in her motorized wheelchair. (R. at 301-07.) This June 2006 hearing, along with the medical records

submitted by Johnson at the time, were part of the record addressed in Judge Debevoise's July 9, 2008 Opinion.

During the March 11, 2009 hearing, Johnson testified that she had constant pain, limitations on her ability to sit, stand, exert, type and write; suffered from dizziness and drowsiness due to her pain medication; can sit for thirty to forty minutes but then has to stretch, walk, lay down, and refrain from sitting for a couple of hours; and could stand for fifteen to twenty minutes, but then has to lay down. (R. at 495-500, 502.) Johnson stated that she can type for an hour and a half and can hold a pen and write for about forty-five minutes before she experiences swelling and pain. (R. at 500-01.) Additionally, Johnson testified that she suffers from asthma and has diabetes that is well controlled. (R. at 504.)

After Johnson's testimony on March 11, 2009, the ALJ questioned medical expert Dr. Fechner, who took all of Johnson's medical complaints into consideration, along with Dr. Fernando's consultative examination. (R. at 338, 347, 512-20.) Dr. Fechner opined that as of the date she was last insured, June 30, 2005, Johnson could perform sedentary work with the usual asthma restrictions, and could only lift her right arm horizontally. (R. at 347, 517.) In his assessment, Dr. Fechner considered Johnson's limitations, including her knee surgeries, neck problems, and MRIs. (R. at 514-15.) Dr. Fechner noted that a June 5, 2006 MRI "does not show a chord compression" and "only mild central canal stenosis and no foramina stenosis." (R. at 519.) Additionally, Dr. Fechner opined that a January 23, 2009 MRI examination "doesn't show very much" and there were "no[] herniated discs, no spinal stenosis, and no internal changes of the spinal cord." (R. at 515.) Dr. Fechner also noted that Johnson had non-insulin-dependent diabetes; was treating her asthma; was doing fine after knee surgery; and by October 2003, had partial hardware removal and could reach overhead without pain. (R. at 513-15.)

Dr. Fechner concluded that, as of the date that she was last insured, Johnson's impairments did not meet or equal any of the listed impairments evaluated in step three of the evaluation process. (R. at 338, 516.) He opined that Johnson's residual functional capacity (or "RFC") would be limited to sedentary work, as she had the ability to walk and stand for at least two hours in an eight-hour workday and since she could lift ten pounds; however, Johnson was restricted with raising her right arm, could not crouch, crawl, or bend more than occasionally, and could not work in an environment with pulmonary irritants. (R. at 346, 517.) Furthermore, taking Johnson's weight into account, Dr. Fechner testified that Johnson could sit for thirty to forty-five minutes before having to stretch for three to five minutes. (R. at 518.) When asked about the effects of Vicodin, Dr. Fechner testified that most people become inured to the effects. (R. at 347, 517-18.)

Following Dr. Fechner's testimony, the ALJ consulted Meola, a vocational expert. (R. at 347, 520-26.) The ALJ asked Meola if jobs existed for a person with Johnson's limitations. (R. at 347-348, 521-522.) Meola testified that although Johnson could no longer work in her former capacity, other jobs existed that she could perform, "such as document prep worker, surveillance system monitor and registration clerk, with 1,200 such jobs existing in the regional economy and 32,000 existing in the national economy." (R. at 348-49, 522-26.)

Following the March 11, 2009 hearing, the ALJ issued ALJ's April 28, 2009 Decision, finding that Johnson was not disabled under the Act.

## **LEGAL STANDARD**

In Social Security appeals, this Court has plenary review over legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to

support those legal conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, "[t]he ALJ's decision may not be set aside merely because we would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). The Court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). A decision to "award benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

Under the Act, an individual will be considered disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A) (2006). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A) (2006). Subjective complaints of pain, alone, cannot be used to conclusively establish disability. 42 U.S.C. § 423(d)(5)(A) (2006). Instead, a claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.*

The Social Security Administration (the "SSA") utilizes a five-step sequential analysis to determine entitlement to disability benefits. *Cruz*, 244 F. App'x at 480 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). The Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is

> whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990) (citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The burden of persuasion lies with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). Once the claimant is able to show that the impairment prevents him from performing his past work, the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy." *Id.* (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

Johnson's contention is that the ALJ's April 28, 2009 Decision that she did not meet a listed impairment at step three and that she retained the RFC for sedentary work does not adequately describe her severe impairment, and that the consideration of her complaint did not utilize the evidence of record.

**The ALJ's Findings**

*Steps One and Two*

In the ALJ's April 28, 2009 Decision, at step one, the ALJ determined that Johnson did not engage in substantial gainful activity. (R. at 337.) At step two, the ALJ found that Johnson had a back disorder (discongenic and degenerative) and a status post fracture of the right proximal humerus, both of which are severe impairments that significantly affected Johnson's ability to work. (R. at 337.)

*Step Three*

At step three, the ALJ found that Johnson's impairments did not meet or equal those listed impairments presumed severe enough to preclude any gainful work. (R. at 337-39.) Johnson argues that the ALJ erred at step three because substantial evidence did not support the ALJ's determination that she does not have: 1) a major dysfunction of her joints that meets or equals § 1.02 of the listed impairments; and 2) a disorder of the spine that meets or equals § 1.04 of the listed impairments. (Pl.'s Br. 30-31; Pl.'s Reply Br. 1-4; *see* 20 C.F.R. Part 404 Appendix 1, Subpt. P.)

This Court finds that there is substantial evidence in the record to support the ALJ's finding that Johnson did not meet a listed impairment, including listed impairments in §§ 1.02 and 1.04. The ALJ's analysis at step three explained his findings. The ALJ reviewed the medical record and explicitly set forth the listed impairments he considered, including §§ 1.02 and 1.04. (R. at 337-349.) The ALJ then stated that while the evidence indicated that Johnson suffered from a back disorder and status post fracture of the right proximal humerus, her impairments were not severe enough to meet or equal a listed impairment. (R. at 338-39.)

Section 1.02: Section 1.02 of the listed impairments, provides in part the following:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. Part 404 Appendix 1, Subpt. P, § 1.02. *See also Diggs v. Astrue*, No. 10-2537, 2011 U.S. Dist. LEXIS 65118, at *36-37 (D.N.J. June 14, 2011). "Inability to ambulate effectively

means an *extreme* limitation of the ability to walk." 20 C.F.R. Part 404 Appendix 1, Subpt. P, § 1.02B2(b)(1) (emphasis added). As stated in *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), an ALJ is not required to adhere to any set format in explaining his analysis so long as there is "sufficient development of the record and explanation of findings to permit meaningful review."

In the instant matter, substantial evidence supports the ALJ's finding that Johnson did not suffer a major joint dysfunction as defined in § 1.02. Although Johnson does have a limitation in her ability to walk, substantial evidence supports the ALJ's findings that Johnson's walking limitations were not "extreme." *See* 20 C.F.R. Part 404 Appendix 1, Subpt. P, § 1.02B2(b)(1). Indeed, the ALJ cited medical records that demonstrate that Johnson could walk on her heels without difficulty, that she did not use an assistive walking device during her examination with Dr. Fernando, and that she uses only one crutch at times, and could stand and walk for at least two hours in an eight-hour workday. (R. at 220, 233, 498, 517.) Furthermore, the ALJ found, and the record supports, that the evidence does not establish that Johnson met her burden of showing "gross anatomical deformity or findings of joint space narrowing, bony destruction, or ankylosis of a weight bearing joint." (R. at 338.)

Section 1.04: In order to meet the requirements of § 1.04, the record must demonstrate "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404 Appendix 1, Subpt. P, § 1.04A. "For a claimant to show [her] impairment[s] match[] a listing, it must meet *all* of the specified medical criteria." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004)

(quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Substantial evidence also supports the ALJ's finding that Johnson did not meet § 1.04 of the listed impairments. (R. at 338.)

First, while Johnson's impairments met some of the criteria under listed impairment 1.04, she does not sufficiently provide evidence demonstrating that her impairments are of listing-level severity. For instance, the record indicates that while Johnson complained of leg numbness, on physical examination, sensation was intact and she was found to have full lower extremity strength. (R. at 73.) Further, medical examinations showed that straight-leg raising was negative, vibratory sensation was intact on both legs, and there was no motor deficit. (R. at 73, 78, 223.) Additionally, Dr. Fechner testified that Johnson's impairments did not meet or equal any of the listings. (R. at 338, 516.)

Second, although Johnson argues that her impairments in combination with her knee surgeries, shoulder surgery, pulmonary impairments, and obesity equal a listed impairment, she failed to show how such alleged additional limitations would meet a listed impairment. (Pl.'s Br. 32.) Furthermore, contrary to Johnson's assertions, the ALJ explicitly considered Johnson's obesity under the guidelines of Social Security Ruling No. 02-01p, 2002 SSR LEXIS 1, and determined that Johnson had not lost her ability to ambulate. (R. at 339.) Additionally, the ALJ considered Johnson's surgeries, asthma, and numerous MRIs in his decision. (R. at 340-43.) Thus, the ALJ properly considered all of the relevant medical evidence and reasonably concluded that Johnson's impairments did not meet or equal any of the listed impairments, including §§ 1.02 or 1.04 of the listed impairments.

### *Steps Four and Five*

Prior to reaching step four, the ALJ determined that Johnson retained the RFC to perform sedentary work with the following limitations: she cannot lift her right arm overhead, cannot use

her right arm for continuous (over one hour at a time) fine fingering manipulation, and she must be able to alternate sitting and standing at her election. (R. at 339.) At step four, the ALJ considered Johnson's RFC and found that Johnson was unable to perform any past relevant work. (R. at 347.)

Johnson asserts that the ALJ's finding at step five that she had the RFC to perform a full range of sedentary work, and could adjust to other work, with certain limitations is not supported by substantial evidence. (R. at 339; 347-48.) According to Johnson, the ALJ improperly evaluated the medical evidence and improperly discredited Johnson's subjective complaints and her treating physician's findings.

This Court finds that the ALJ reasonably found that Johnson retained the RFC to perform limited sedentary work. The RFC determination was supported by several medical opinions in evidence and was accompanied by appropriate narrative discussion, which provided "a clear and satisfactory explication of the basis on which it rest[ed]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Specifically, the ALJ found that Johnson had the RFC to "perform the full range of sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [T]he claimant cannot lift the right arm over the head. She cannot use the right arm for continuous (over one hour at the time) fine fingering manipulation, but can do fine fingering manipulation for periods of less than one hour at a time. The claimant must work in a job where she can alternate standing and sitting at her election.

(R. at 339.)

The ALJ used his assessment of Johnson's RFC and testimony from Meola, the vocational expert, to determine the kind of work that Johnson could perform. (R. at 347.) When an ALJ poses a hypothetical question to the vocational expert regarding the claimant's

15

limitations, he must "accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis added). In the instant matter, the ALJ asked Meola if jobs existed for a person who is limited to sedentary work, must alternate between sitting and standing, cannot lift her right arm over the horizontal, cannot engage in repetitive fine figuring manipulations, and cannot repetitively move her neck. (R. at 347-48, 521-22.) Additionally, the ALJ asked Meola to consider the additional limitation of having to miss work once a month and of only performing simple and repetitive tasks due to the side effects of taking pain medication. (R. at 523-24, 526.) The ALJ posed an appropriate hypothetical question to Meola because the limitations that he provided to Meola were supported by substantial evidence. Contrary to Johnson's assertion, the ALJ also considered Johnson's obesity and her pain medication side effects when he assessed her RFC. (R. at 345, 347, 517-18.) The ALJ evaluated Meola's opinion that Johnson could perform limited sedentary work under step five and addressed it in his ALJ April 28, 2009 Decision.

At step five, considering the relevant factors, including RFC, the ALJ found that "there were jobs that existed in significant numbers in the national economy" that Johnson could perform. (R. at 348.) Thus, the ALJ found that Johnson was not disabled under the Act. (R. at 349.) The medical record as a whole substantially supports ALJ's RFC findings, and his findings under steps four and five. (R. at 522-23.)

Johnson argues that the ALJ did not properly evaluate her subjective complaint of disabling pain with associated limitations. (Pl.'s Br. 21-22.) Pursuant to the Commissioner's regulations, the ALJ must determine whether a claimant has a medically determinable impairment that could reasonably cause the subjective symptoms alleged and then "determine the

extent to which a claimant is accurately stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). "Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make," and are "entitled to great weight." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (internal quotation marks omitted).

Here, the ALJ found that Johnson's statements as to her alleged debilitating pain and disabling limitations were not credible because they were inconsistent with her daily activities, the objective medical findings, and the record evidence as a whole. (R. at 339-41.) Dr. Fechner and Meola's testimonies supported the ALJ's RFC findings. (R. at 340-47.) The ALJ also cited the DDS examiner's findings, which cited relevant MRIs and discussed the inconsistencies between Johnson's statements and her daily activities. (R. at 234, 240.) The ALJ found that Johnson's activities (i.e., shopping, cooking, cleaning, driving, frequently lifting her child that weighed twenty-seven pounds, etc . . .) undermine her claims of disabling pain. (R. 55-56, 73, 199, 202, 221, 309.) The ALJ found that although Johnson's medically determinable impairments could reasonably cause pain and symptoms, her pain was not so severe as to prevent her from performing a limited range of light and sedentary work. (R. at 340-41.) The ALJ's findings regarding Johnson's subjective complaints are supported by the record and adequately addressed in the ALJ's April 28, 2009 Decision.

Johnson's position that the ALJ should have adopted Dr. Rajapakse's opinion, which suggested a less than sedentary RFC, was not supported by substantial evidence. The ALJ is entitled to weigh all evidence in making his or her finding. *See Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) ("The ALJ is not bound to accept the opinion or theory of

any medical expert, but may weigh the medical evidence and draw its own inferences."). Per the Commissioner's regulations, a treating physician's opinion is controlling if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent* with the other substantial evidence of the record. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ considered Dr. Rajapakse's findings and properly determined that Dr. Rajapakse's opinion was inconsistent and "not persuasive in light of the medical and other evidence in the record", and thus, was "not entitled to controlling weight." (R. at 342-43, 345.) Therefore, the ALJ's finding in this regard was supported by substantial evidence and was not contrary to law. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." (internal quotation marks omitted)). The ALJ properly considered and evaluated Dr. Rajapaske's questionnaire.

As previously noted, the decision of an ALJ, pursuant to the Act, may not be set aside merely because this Court would or could have reached a different decision. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007). The ALJ adequately evaluated the record as a whole and explained his reasoning for his findings. After reviewing the administrative record, this Court finds that the ALJ's April 28, 2009 Decision is based on substantial evidentiary support as required by 42 U.S.C. § 405(g) (2006).

## CONCLUSION

For the foregoing reasons, the ALJ's April 28, 2009 Decision is **AFFIRMED**.

s/ Susan D. Wigenton, U.S.D.J.

Orig: Clerk
       Parties